**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DAVID ACOSTA,

                        **Plaintiff,**

-vs-                                        **Case No.  6:11-cv-1266-Orl-31GJK**

JAMES A. GUSTINO, P.A.; JAMES A.
GUSTINO; TAYLOR & CARLS, P.A.;
PAUL T. HINCKLEY; and ERIC F.
WHYNOT,

                        **Defendants.**

_____

# ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 38) filed by

Defendants Paul Hinckley ("Hinckley"), Eric Whynot ("Whynot") and Taylor & Carls, P.A. (the

"Taylor Firm") and the response in opposition (Doc. 42) filed by the Plaintiff, David Acosta

("Acosta").

## I.    Background

Except where indicated, the following facts are undisputed.  According to the allegations of

the First Amended Complaint, the instant case grows out of a dispute between the Plaintiff and the

Alaqua Property Owners Association ("Alaqua"), which is not a party to this case.  Alaqua

contends that Acosta owes a number of years' worth of homeowner association maintenance

assessments, plus interest charges, attorneys' fees and other charges.  Beginning in October 2007,

Defendants Hinckley, Whynot, and the Taylor Firm (henceforth, the "Taylor Firm Defendants')

attempted to collect the purported obligation from Acosta, sending him a demand letter and, in April 2008, filing suit against him in Seminole County Circuit Court on behalf of Alaqua.

The Taylor Firm Defendants litigated that matter (henceforth, the "State Court Suit") on behalf of Alaqua until May 2009, when they were replaced by another law firm.  About six months ago, Defendants James Gustino ("Gustino") and James A. Gustino, P.A. (the "Gustino Firm") (collectively, the "Gustino Firm Defendants") took over the State Court Suit from the firm that had replaced the Taylor Firm Defendants.

As set forth in the Amended Complaint (Doc. 37), in the State Court Suit Alaqua is attempting to foreclose a lien on Acosta's property and to recover a money judgment from him. Acosta argues that both claims are time-barred.  He argues that Alaqua's lien was recorded in December 2002 and expired five years later – several months before the State Court Suit was filed. (Amended Complaint at 7).  He also argues that Alaqua's claim of entitlement to a money judgment is based on "the exact same set of facts" as the lien foreclosure claim, and that the claim is subject to a four-year statute of limitations, so that it expired a year before Alaqua's lien did. (Amended Complaint at 7).

Acosta also argues that the sum demanded on Alaqua's behalf by the Taylor Firm Defendants and the Gustino Firm Defendants (both in pre-litigation demand letters and in the State Court Suit itself) "included interest charges exceeding the statutory limit imposed under [Florida law] for unpaid assessments".  (Amended Complaint at 8).  He further argues that this sum included assessments that were not properly authorized under Alaqua's bylaws.  Amended Complaint at 11).  In addition, he alleges that the Defendants knew or should have known that the claims asserted in the State Court Suit "falsely stated the amount, character and legal status of the

disputed consumer debt." (Amended Complaint at 13). He contends that the actions of the

Defendants violate a number of federal and state laws, including the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 *et. seq.* (the "FDCPA") (Counts I-VI), the Florida Consumer Collection

Practices Act, Fla. Stat. § 559.55 *et seq.* (Count VII-VIII), the Florida Deceptive and Unfair Trade

Practices Act, Fla. Stat. § 501.201 *et seq.* (Count IX, XI-XII), and constitute abuse of process

(Count X).

## II.   Colorado River Abstention

The Defendants assert numerous substantive arguments in support of dismissal. However,

they also seek dismissal or a stay pursuant to the abstention doctrine announced in *Colorado River*

*Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The

Court must resolve this issue before addressing substantive issues.

Generally speaking, the pendency of an action in state court is no bar to proceedings

concerning the same matter in the federal court having jurisdiction. *Id.* at 817, 96 S.Ct. at 1246.

To the contrary, federal courts have a "virtually unflagging obligation ... to exercise the

jurisdiction given them." *Id.* Under limited circumstances, however, "reasons of wise judicial

administration" permit the dismissal of a federal suit due to the presence of a concurrent state

proceeding. *Id.* at 818, 96 S.Ct. at 1246. Among the factors the district court should consider in

determining whether the state proceeding provides a more appropriate forum are

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative
> inconvenience of the fora; (3) the order in which jurisdiction was obtained and the
> relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5)
> whether federal law provides the rule of decision; and (6) whether the state court
> will adequately protect the rights of all parties.

*TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1294-95 (11th Cir. 1998) (summarizing

*Moses H. Cone Memorial Hospital v. Mercury Constr. Co.*, 460 U.S. 1, 16-26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).  The decision whether to dismiss "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 937.  The weight of each factor varies on a case-by-case basis, depending on the particularities of that case.  *Id.*  One factor alone can be the sole motivating reason for the abstention.  *Id.*

**III.     Abstention Analysis**

        The first step in determining whether to apply the *Colorado River* abstention doctrine is to inquire whether the concurrent state and federal proceedings are "parallel."  Exact parallelism is not required; it is enough if the two cases involve substantially the same parties and substantially the same issues.  *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004).  Acosta argues that *Colorado River* is inapplicable because, in his words, "there are no federal and state proceedings involving the Defendants and the Plaintiff, therefore, the initial threshold issue enunciated in *Ambrosia Coal* is not met and the inquiry must end there."  (Doc. 42 at 10).  However, *Ambrosia Coal* requires that the parties be substantially similar, not identical. *Id.*  Obviously, Acosta appears in both of these actions, and the defendants here acted as agents for the plaintiff in the state case regarding all of the activities of which Acosta complains in this case.

        In addition, the primary issues in both suits are the same – the amount of money, if any, Acosta owes to Alaqua and whether Alaqua may foreclose its lien.  To be sure, the two suits are consideiring the issues from slightly different perspectives.  The state court is being called upon to determine whether the (alleged) debt may be lawfully collected by Alaqua, while this court is

being asked whether the (alleged) inability to lawfully collect the debt rendered the Defendants'

collection efforts on behalf of Alaqua unlawful.  The proceedings are not identical, but they are

parallel.

Acosta argues that "nothing within the four corners of the Amended Complaint even

suggests facts" that show that *Colorado River* applies here, and "the Rule 12(b)(6) standard"

precludes the Court from looking outside that document.  Acosta is incorrect as to both points.

First, the Defendants are not arguing that the Court should abstain because Acosta has failed to

state a claim, which is the basis for a motion under Rule 12(b)(6).  Acosta has not provided any

support for his contention that the Rule 12(b)(6) standard applies even where defendants are not

making such an argument.  More importantly, the Amended Complaint extensively discusses the

State Court Suit and demonstrates that the issues are the same in that proceeding as in this one:

> On April 28, 2008 TAYLOR and WHYNOT filed a two-count Verified Complaint
> ("POA Complaint") in Seminole County Circuit Court on behalf of [Alaqua]
> against the Plaintiff to foreclosure [sic] a lien on Plaintiff's real property in Count
> I, and to obtain a money judgment in Count II. This pleading contained
> misrepresentations regarding the validity of the debt, enforceability of the
> consumer debt, the amounts due and the sums sought to be enforced contained
> illegal interest charges.
>
> . . .
>
> This lawsuit is referred to herein as the "State Action" and is Case No.
> 2008-CA-2460 now pending in Seminole County Circuit Court. ACOSTA was
> served with [Alaqua's] Complaint on or about June 6, 2008.

(Amended Complaint at 4) (emphasis in original).

> GUSTINO then filed a notice of appearance in the State Action on behalf of the
> POA and continued to prosecute the POA claims by filing in Seminole County
> Court documents that contained false and misleading information about the
> consumer debt sought to be enforced against Acosta.

. . .

On June 27, 2011 GUSTINO and GUSTINO-PA filed a motion in the State Action and then obtained an order allowing [Alaqua] to amend its complaint to "re-incorporate lien foreclosure count". The motion had attached a copy of the original complaint against Acosta and that contained false representations of the validity of disputed consumer debt, including enforceability, as more fully described below. The motion and amended pleading [contained] misrepresentations regarding the validity of the debt, enforceability of the consumer debt, the amounts due and the sums sought to be enforced contained illegal interest charges.

(Amended Complaint at 6) (emphasis in original).

The POA Complaint reveals on its face that all claims in the State Action against ACOSTA were barred by the applicable limitations. . . .  Count I of the Verified Complaint, as alleged therein at Paragraph No. 9, sought foreclosure of a lien "recorded on 12/1/2002".  In Florida, the association's lien expires five (5) years from the recording of the lien into the public records of the County.

. . .

[Alaqua's] Complaint was filed on April 28, 2008, or approximately 139 days after the limitations period expired.

. . .

Count II of the Verified Complaint re-alleged the exact same set of facts as in Count I. The limitations period applicable to these claims is four (4) years. This cause of action, if any, expired on 12/1/2006, or more than 500 days prior to the filing of the POA Complaint.

(Amended Complaint at 7) (emphasis in original).

In addition to laying out his statute of limitations defenses to the claims in the State Court Suit, Costa also describes how, in the State Court Action, Alaqua seeks to collect "sums that include[] interest charges unlawfully exceeding the statutory limit imposed under Florida Statute § 720.3085 for unpaid assessments." (Amended Complaint at 8).  He spends three pages reciting dates on which charges were imposed (and the amounts of those charges) and calculating effective

interest rates supporting his contention that excessive rates were imposed.  He then spends another

two pages of his Amended Complaint explaining how the debt being pursued in the State Court

Case "did not exist or was otherwise invalid because [Alaqua] never authorized the assessments in

the manner required by Fla. Stat. § 720.308(1)(a), [Alaqua's] governing Bylaws, The Declaration

of Restrictive Covenants and Florida law governing corporations."[1]  (Amended Complaint at 11-

12).

Finally, before beginning to list the twelve counts he asserts in the Amended Complaint,

Acosta sums up by announcing that the Defendants in this case

> knew or should have known that the claims asserted in the State Action falsely
> stated the amount, character and legal status of the disputed consumer debt, that
> said claims were barred by statute and that the amounts sought from the Plaintiff
> included interest charges deemed usurious under Florida law. Allegations asserted
> against GUSTINO and GUSTINO-PA are of an ongoing and continuing nature as
> these Defendants continue to make the same false representations in pursuit of a
> judgment against the Plaintiff in the State Action.

(Amended Complaint at 13).

The twelve counts rely on the same facts set out above as being at issue in the State Court

Suit.  For example, in Count I, Acosta alleges that the Gustino Defendants violated the FDCPA by

threatening him with legal claims that were barred by the applicable statutes of limitations, while

in Count II he alleges that those defendants violated the FDCPA by misrepresenting the legal

status of a debt (by implying that it was enforceable despite the statute of limitations issue).

(Amended Complaint at 13-15).  And in Counts XI and XII, Acosta seeks declaratory relief and an

---

[1]In particular, Acosta contends that Alaqua did not hold the meetings required to authorize the assessments or lacked the necessary quorum when such meetings were held.  (Amended Complaint at 11-12).

injunction in regard to the State Court Suit, asserting *inter alia* that the Taylor Firm Defendants "prosecut[ed] a lawsuit against the Plaintiff in the State Action with claims that sought to collect amounts of money tainted with interest charges deemed usurious under Florida law." (Amended Complaint at 25, 27).   In short, based solely on the information that Acosta has chosen to include in the Amended Complaint, the vast majority if not all of the claims asserted in this action are also at issue in the ongoing State Court Action.   These actions are parallel, and *Colorado River* may apply in this case.

To determine whether abstention in regard to this action is appropriate, the Court must consider the following factors:

*The order in which the courts assumed jurisdiction over property*

The Defendants assert (and the Plaintiff does not deny) that the state court has assumed jurisdiction over the Florida property at issue.  The Court therefore finds that this factor weighs in favor of abstention.

*The relative inconvenience of the fora*

Neither party has indicated that one forum is more convenient than the other.  This factor is neutral.

*The order in which jurisdiction was obtained and the relative progress of the two actions.*

The State Court Suit was filed in April 2008.  Discovery has been ongoing in that forum since March of 2009, and at least two summary judgment motions have been decided by the state court.  The instant suit was filed in August of 2011, and no discovery or motion practice had occurred prior to the filing of the instant motion.  This factor weighs in favor of abstention.

*The desire to avoid piecemeal litigation*

The Defendants argue that the current circumstances present the potential for piecemeal litigation, because this action and the State Court Suit might come to inconsistent results.  But this sets the bar too low.  Such a threat of inconsistency is present in every set of parallel proceedings. Within this Circuit, abstention is not favored unless the circumstances present a threat of "abnormally long or excessive" piecemeal litigation – as in *Colorado River* itself, where (absent abstention) the state's continuous water-rights-adjudication system would have been duplicated by a federal suit against some 1,000 water users.  *Colorado River* at 805, 96 S.Ct. at 1240.  In the instant case, the duplication would involve only a handful of parties, and the litigation is not particularly complex.  This factor is neutral.

*Whether federal law provides the rule of decision*

The FDCPA provides the rule of decision for half of Acosta's claims, but even the federal claims require assessment of state law, such as Florida statutes of limitation and usury limitations. The Court finds that this factor is neutral.

*Whether the state court will adequately protect the rights of all parties*

No party has alleged that the state court will not adequately protect its rights.  Accordingly, this factor is neutral.

Thus two of the six factors weigh in favor of abstention, and none weigh against it.  In addition, the Supreme Court has stated that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*."  *Moses H. Cone*, 460 U.S. at 17 n. 20, 103 S.Ct. at 937.  The Amended Complaint plainly demonstrates that this matter was filed in reaction to the State Court Suit.  This

further counsels in favor of abstention.  After adding this factor to the two other factors identified

above, the Court finds that abstention is warranted.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 38) filed by Defendants Paul Hinckley, Eric

Whynot and Taylor & Carls, P.A. is **GRANTED IN PART AND DENIED WITHOUT**

**PREJUDICE IN PART**.  Insofar as the motion seeks dismissal pursuant to  *Colorado River*

*Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the

motion is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.  In all other

respects, the motion is **DENIED WITHOUT PREJUDICE**.  All other pending motions are

**DENIED AS MOOT**.  The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 6, 2011.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party