**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DAVID ACOSTA,**

**Plaintiff,**

**v.** **Case No: 6:11-cv-1266-Orl-31GJK**

**JAMES A. GUSTINO, P.A., JAMES A. GUSTINO, TAYLOR & CARLS, P.A., PAUL T. HINCKLEY and ERIC F. WHYNOT,**

**Defendants.**

---

## ORDER

This matter is before the Court on Defendant James A. Gustino ("Gustino") and James A. Gustino, P.A.'s (the "Gustino Firm") Motion to Dismiss the Amended Complaint (Doc. 69) ("Motion") and David Acosta's ("Acosta") Response in Opposition to the Motion (Doc. 70) ("Response").

### I. Background

According to the allegations of the First Amended Complaint, the instant case grows out of a dispute between the Plaintiff and the Alaqua Property Owners Association ("Alaqua"), which is not a party to this case. Alaqua contends that Acosta owes a number of years' worth of homeowner association maintenance assessments, plus interest charges, attorneys' fees, and other charges. Beginning in October 2007, Defendants Hinckley, Whynot, and the Taylor Firm (the "Taylor Firm Defendants") attempted to collect the purported obligation from Acosta, sending him a demand letter and, in April 2008, filing suit against him in Seminole County Circuit Court on behalf of Alaqua.

The Taylor Firm Defendants litigated that matter (the "State Action") on behalf of Alaqua until May 2009, when they were replaced by another law firm that is not a party to this lawsuit. Thereafter, Defendants Gustino and the Gustino Firm (the "Gustino Firm Defendants") took over the State Action from the firm that had replaced the Taylor Firm Defendants.

As set forth in the Amended Complaint (Doc. 37), in the State Action Alaqua is attempting to foreclose a lien on Acosta's property and to recover a money judgment from him. Acosta argues that both claims are time-barred. He argues that Alaqua's lien was recorded in December 2002 and expired five years later—several months before the State Action was filed. (Doc. 37 at 7). He also argues that Alaqua's claim of entitlement to a money judgment is based on "the exact same set of facts" as the lien foreclosure claim, and that the claim is subject to a four-year statute of limitations, so that it expired a year before Alaqua's lien did. (Doc. 37 at 7).[1]

Acosta also argues that the sum demanded on Alaqua's behalf by the Taylor Firm Defendants and the Gustino Firm Defendants (both in pre-litigation demand letters and in the State Action itself) "included interest charges exceeding the statutory limit imposed under [Florida law] for unpaid assessments". (Doc. 37 at 8). He further argues that this sum included assessments that were not properly authorized under Alaqua's bylaws. (Doc. 37 at 11). In addition, he alleges that the Defendants knew or should have known that the claims asserted in the State Action "falsely stated the amount, character and legal status of the disputed consumer debt." (Doc. 37 at 13). He contends that the actions of the Gustino Firm Defendants violate a number of federal and state laws, including the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq*. (Counts I-VI), the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et*

[1] The Motion and Response indicate that the judge in the State Action has determined that the State Action claims were time-barred. Because this Court need not address any issues related to the timeliness of the claims in the State Action, it does not.

*seq.* (Counts VII-VIII), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (Count IX), and constitute abuse of process (Count X).[2]

Acosta alleges that two acts by the Gustino Firm Defendants justify the counts against them—(1) sending a letter regarding mediation, amendment of the State Action complaint, and other litigation issues for the State Action (the letter was sent to Acosta's attorney on May 5, 2011 and is the "Gustino Letter") and (2) amending the complaint to reinstate a foreclosure count in the State Action. (Doc. 37 at 5-7). The Gustino Firm Defendants contend that the FDCPA claims were insufficiently pled and that the litigation privilege bars the state law claims. Thus, the Court first addresses the federal claims, then the state law claims before it on supplemental jurisdiction.

## II. Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a

[2] Counts XI and XII alleging violations of Florida statutes against the Taylor Firm Defendants were previously dismissed. (Doc. 57).

liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

## III. Analysis

### A. Federal Claims: Whether Plaintiff Sufficiently Alleged the Gustino Firm Defendants Are Debt Collectors Under the FDCPA.

The Gustino Firm Defendants assert that Acosta has not sufficiently alleged facts to establish that they are "debt collectors" within the meaning of the FDCPA. Because they are correct the FDCPA claims, Counts I – VI, must be dismissed.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or who *regularly* collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added). It is a predicate that the Gustino Firm Defendants be debt collectors to be liable under the FDCPA as alleged in Counts I - VI. *See* 15 U.S.C. § 1692e (proscribing activities of debt collectors); 15 U.S.C. § 1692f (same); 15 U.S.C. § 1692g (same).

Acosta asserts that he has sufficiently alleged the Gustino Firm Defendants were debt collectors based on paragraphs five, seven, and eight of the Amended Complaint and based on the

Gustino Letter. (Doc. 70 at 2-3). With regard to whether the Gustino Firm Defendants are debt collectors, those paragraphs assert:

> 5. Defendant James A. Gustino, P.A. is a Florida law firm engaged in the practice of law . . . . This Defendant is engaged in collection of consumer debts on behalf of others.
>
> 7. The following Defendants are Florida attorneys who regularly engage in the collection of consumer debt for others at all times relevant to the allegations stated herein: James A. Gustino . . . ; Paul T. Hinckley . . . ; Erik F. Whynot . . . .
>
> 8. All of the Defendants are debt collectors as defined by the [sic] 15 U.S.C. § 1692a(6) . . . .

Further, Acosta points to the section of the Gustino Letter that states that Gustino "represents the interests of Alaqua Property Owners Association, Inc. (the "Association") relative to its *collection of outstanding homeowners association assessments, together with accrued interests, costs and attorney's fees*." (Doc. 70 at 3 (emphasis added by Acosta)).

Absent from these allegations and the Gustino Letter is any indication as to whether the Gustino Firm Defendants' principle business purpose is collection of debts or whether they regularly collect or attempt to collect debts. Paragraph five gives no indication of the principle purpose of the Gustino Firm Defendants' business and gives no indication whether they regularly engage in the collection of consumer debt. Paragraph seven lumps together all the defendants that were part of the case as of the filing of the Amended Complaint and ascribes the legal label of "regularly engage in the collection of consumer debts" to the lot without factual elaboration as to any individual defendant or their individual business. Finally, paragraph eight merely incorporates the statutory definition without any facts. These allegations are merely legal conclusions, and do not provide the requisite factual basis to substantiate the FDCPA claims. *See Correa v. BAC Home Loans Servicing LP*, 6:11-CV-1197-ORL-22, 2012 WL 1176701, at *12 (M.D. Fla. Apr. 9, 2012) ("Plaintiff cites the general definition for 'debt collector' and in a conclusory manner, states

that Defendant BAC and Defendant BOA are debt collectors. Such legal conclusions are insufficient to state a claim for relief." (internal citations omitted)); *see also Swain v. CACH, LLC*, 699 F. Supp. 2d 1109, 1112-13 (N.D. Cal. 2009) ("Plaintiff has merely alleged the legal conclusion that all Defendants are debt collectors without providing any supporting facts demonstrating that they each engage in a business the principal purpose of which is the collection of debts."); *cf. Dunham v. Lombardo, Davis & Goldman*, 830 F. Supp. 2d 1305, 1307 (S.D. Fla. 2011) (noting that mere recitation of FDCPA language as to essential element of FDCPA violation was insufficient factual basis for claim).

The Gustino Letter also fails to reveal whether the Gustino Firm Defendants are debt collectors within the meaning of the FDCPA. It demonstrates only that they are taking action on behalf of a client that may be related to a debt collection within the meaning of the FDCPA. It does not allege that debt collection is a regular business practices or purpose of the Gustino Firm Defendants.

Accordingly, Acosta has not sufficiently alleged that the Gustino Firm Defendants are debt collectors within the meaning of the FDCPA.

**B. State Law Claims: Whether the Litigation Privilege Bars the FCCPA, FDUTPA, and Abuse of Process Claims.**

Acosta has asserted claims for violations of Florida statutes under the FCCPA, FDUTPA, and a common law abuse of process claim. The state law claims are before the Court on supplemental jurisdiction. 28 U.S.C. § 1367. The Gustino Firm Defendants assert that the complained of actions are subject to the litigation privilege under Florida law and are therefore immune from liability. The Florida Supreme Court has held "that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at

issue, so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994); *see also Kinsey v. MLH Fin. Servs., Inc.*, 509 F. App'x 852, 853-54 (11th Cir. 2013) (not for publication) ("In Florida, absolute immunity attaches to any act that occurs during the course of a judicial proceeding so long as the act has some relation to the proceeding."). The litigation privilege applies to FCCPA, FDCPA, and abuse of process claims if the complained of act meets the test set forth in *Levin*. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (holding that the litigation privilege applies to all causes of action in Florida); *LatAm Investments, LLC v. Holland & Knight, LLP*, 88 So. 3d 240, 242 (Fla. Dist. Ct. App. 2011) (holding litigation privilege applies to abuse of process claims) *rev. denied*, 81 So. 3d 414 (Fla. 2012), *see also N. Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1331 (M.D. Fla. 2009) ("[T]he mere existence of FCCPA litigation does not attach the privilege to every communication between litigants; rather, the communication must be analyzed in light of its relation to the litigation.").

As an initial matter, the Plaintiff points out that the litigation privilege is an affirmative defense and that it is inappropriate to be decided on a motion to dismiss unless "the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988) (internal quote omitted). Notably, however, "the Florida courts have . . . made it abundantly clear that any affirmative defense, including the litigation privilege, may be considered in resolving a motion to dismiss" when the defense is clearly applicable based on the face of the complaint. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1277 (11th Cir. 2004). Accordingly, whether the litigation privilege is plainly applicable to the Gustino Letter and amending the State Action complaint are

evaluated based on the information presented on the face of the Amended Complaint.

**1. Gustino Letter**

The Gustino Letter is before this Court as an exhibit attached to the Amended Complaint. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Acosta states that the Gustino Letter illustrates that the litigation privilege is inapplicable in this case. While there is no Florida case squarely on point that holds the litigation privilege would apply to communications like the Gustino Letter, the Court believes that the Florida Supreme Court would find that the Gustino Letter is related to the State Action.

The Gustino Letter communicates information from one attorney to another—all of which is about the State Action litigation and underlying dispute. (Doc. 37 at 31-33). The letter makes clear that the State Action had already been filed and was ongoing at the time the letter was sent. The letter first advises Acosta's attorney, Mr. David M. Chico ("Chico"), that Gustino has been retained to represent Alaqua in the State Action and that he will be entering an appearance in the case. Gustino next makes clear his intent to amend the complaint in the State Action and seeks to coordinate a motion to amend. Having addressed the procedural issues Gustino invites Chico to present case law demonstrating that Acosta would prevail in a claim against Alaqua based on a theory that neighborhood restrictions imposed by Alaqua were unconstitutional. Gustino then references Florida's sanctions standard for bringing claims lacking support in law. Additionally, Gustino covers standard litigation coordination related to depositions and mediation. Plainly, all the subjects addressed in the letter are grounded in, and linked to, the dispute—it is therefore related to the proceeding. *Cf. Jackson*, 372 F.3d at 1277 (addressing litigation privilege in the context of settlement discussion and stating "[q]uite simply, because the plaintiffs' complaint concerns conduct that lay at the heart of the attempts to resolve the ongoing judicial proceedings in

the *Adams* litigation, Florida's litigation privilege bars their state law claims").

**a. Lack of Notice of Appearance in State Action Does Not Preclude Litigation Privilege**

Acosta points out that that the letter was sent prior to Gustino entering a notice of appearance in the State Action and asserts that this "demonstrates conduct giving rise to the Plaintiff's claims occurred before Defendants were involved in any active litigation." (Doc. 70 at 10-11). Plaintiff cites to *Levin* and *Echevarria* for the proposition that absolute immunity only arises for acts required or permitted in the course of judicial proceedings. Acosta argues that the Gustino Letter necessarily fails to qualify for the privilege because it was issued prior to Gustino's notice of appearance in the State Action and prior to Acosta filing a claim against Alaqua. (Doc. 70 at 10-11).[3]

*Levin* is the applicable standard to determine if the litigation privilege applies in this case and *Levin* did not create a rule based on a notice of appearance. The First District Court of Appeal has observed "[i]n recognition of the necessity of providing for the free flow of information . . . courts have not imposed a strict relevancy test in determining whether a statement made in the judicial process is entitled to immunity; rather, courts provide for absolute immunity if a statement is made during the course of the proceeding and 'has some relation to the proceeding.' " *Hope v. Nat'l Alliance of Postal & Fed. Employees, Jacksonville Local No. 320,* 649 So. 2d 897, 901 (Fla.

[3] Several of Plaintiff's citations in the section raising this argument, titled "Litigation Privilege Inapplicable Without Active Litigation," are confusing at best. (*See* Doc. 70 at 10-12). One of the quotes ascribed to the *Echevarria* opinion can only be assumed to have been intended to cite *Levin* because the cited page number is 608. *Compare Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608; *with Echevarria, McCalla, Raymer, Barrett & Frappier,* 950 So. 2d at 385; *with* (Doc. 70 at 10-11). The proposition cited by Plaintiff was that "absolute immunity arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings." Plaintiff cited *Echevarria* with a "see also" signal, but failed to note that the cited language was only quoted in part of Justice Wells' opinion concurring in part and dissenting in part. *Echevarria, McCalla, Raymer, Barrett & Frappier*, 950 So. 2d at 385, (Wells, J. concurring in part and dissenting in part).

Dist. Ct. App. 1995) (quoting *Levin*).

Further, *Echevarria* did not modify *Levin* to create a rule that the absence of a notice of appearance establishes the litigation privilege does not apply. Justice Wells' opinion, concurring in part and dissenting in part, observed: "In the instant case, the majority rightfully declines to address at what point 'a judicial proceeding' begins for purposes of the litigation privilege because it is unnecessary to do so given the facts of this case." *Id.* at 386. The issue before the *Echevarria* court was whether the litigation privilege extends to all causes of action in Florida and the court plainly said "[w]e limit our review to the question of law upon which jurisdiction was granted, and hold that the litigation privilege applies in all causes of action, statutory as well as common law." *Echevarria, McCalla, Raymer, Barrett & Frappier*, 950 So. 2d at 380.

Implementing the strict rule proposed by Plaintiff, that there is no litigation privilege until an attorney files a notice of appearance, would hinder the ability of counsel to send early communications to opposing counsel about a lawsuit. Such a rule would be contrary to the policy set out in *Levin*. *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608 ("Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.").

**b. FCCPA Claims Are Not Beyond the Application of Litigation Privilege**

With regard to the FCCPA claims, Counts VII and VIII, Plaintiff relies on *North Star Capital Acquisitions, LLC*, 611 F. Supp. 2d 1331-32 to argue that claims under the FCCPA are "beyond application of the litigation privilege . . . ." (Doc. 70 at 8). *North Star* involved a lawsuit by a creditor against an alleged debtor filed in Florida county court. *Id.* at 1327-28. The debtor was served with a summons and complaint and included with the service was a letter from the

creditor's attorney and a document titled "Stipulation for Entry of Final Judgment Execution Withheld." *Id.* Notably, the letter at issue in *North Star* stated "If we agree on an amount, *you will not have to go to court*. (This is your last opportunity to resolve this matter without going to court.) Please understand that any information we obtain will be used for purpose of collecting this debt." *Id.* In *North Star*, this Court held:

> Applying the litigation privilege to the communications here would eviscerate the FCCPA and allow attorney debt collectors to avoid liability under state law for potentially abusive and harassing collection practices simply by filing a lawsuit before attempting to collect a debt. While the line between settlement negotiations inherent in most civil suits and debt collection activities might be hard to discern in some cases, it is not here. The Letter and Stipulation served on counterclaim plaintiffs with the summons and complaint were more akin to an attempt to collect a debt in its entirety, rather than a settlement negotiation; accordingly, the litigation immunity privilege is inapplicable.

*Id.* at 1332 (footnotes omitted). The letter in *North Star* differs from Gustino Letter, which is best characterized as an initial communication from new counsel addressing outstanding litigation matters and presenting his initial view on the merits of his opponent's case.

As *North Star* plainly stated: "the mere existence of FCCPA litigation does not attach the privilege to every communication between litigants; rather, *the communication must be analyzed in light of its relation to the litigation*." *Id.* at 1331 (emphasis added); *see also Mikesell v. FIA Card Servs., N.A.*, 2:12-CV-606-FTM-29, 2013 WL 5781241, at *2 (M.D. Fla. Oct. 25, 2013) (quoting *North Star* for the proposition that communications must be analyzed as they relate to the litigation and holding that claims based on FIA Card Services filing of a lawsuit relating to a debt were barred by the litigation privilege).

The Court has analyzed the Gustino Letter in light of the State Action and underlying dispute and concludes that the letter was related to the proceeding. Accordingly, the Gustino Firm Defendants are entitled to immunity from the FCCPA, FDUTPA, and abuse of process claims to the extent they are based on the Gustino Letter.

**2. Amendment of State Action Complaint**

Acosta also alleges that Gustino's amendment of the complaint in the State Action to reintroduce a foreclosure claim is a basis for the state law claims. However, an attorney filing an amended complaint is one of the quintessential acts occurring during the course of and related to a proceeding. *See Wolfe v. Foreman*, 3D10-3055, 2013 WL 3724763, at *3 (Fla. Dist. Ct. App. July 17, 2013) (not presently released for publication in permanent law reports) ("It is difficult to imagine any act that would fit more firmly within the parameters of *Levin* and *Echevarria* than the actual filing of a complaint. The filing of a complaint, which initiates the judicial proceedings, obviously 'occurs during the course of a judicial proceeding' and 'relates to the proceeding.' ").[4] The Gustino Firm Defendants' act of filing the amended complaint in the State Action falls squarely within the litigation privilege.

Accordingly the state law claims in Counts VII – X must be dismissed.

Based on the foregoing, it is

**ORDERED**, that the Motion (Doc. 69) is **GRANTED**. The remaining counts in the Amended Complaint, Counts I – X are **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have until, and including, December 2, 2013, to file a Second Amended Complaint.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 18, 2013.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

[4] While the Third District's opinion in *Wolfe*, as of the date of this Order, has not yet been released for publication in a permanent law report and is still subject to revision or withdrawal, the opinion, as it currently stands, accurately reflects this Court's view.

Copies furnished to:

Counsel of Record
Unrepresented Party