# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DAVID ACOSTA,**

       **Plaintiff,**

**v.**                                      **Case No:   6:11-cv-1266-Orl-31GJK**

**JAMES A. GUSTINO, P.A. and JAMES A.
GUSTINO,**

       **Defendants.**

_____

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary

Judgment (Doc. 81) filed by the Plaintiff, David Acosta ("Acosta"), the response in opposition

(Doc. 88) filed by the Defendants, James A. Gustino ("Gustino") and James A. Gustino, P.A. (the

"Gustino Firm"), and the reply (Doc. 97) filed by Acosta.

### I.    Background

This case has its roots in a dispute between Acosta, who owns a house in a development

known as "Alaqua," and the homeowners association for the development, the Alaqua Property

Owners Association, Inc. (henceforth, the "Alaqua POA").   The Alaqua POA alleged that Acosta

owed it a substantial debt for delinquent maintenance assessments, interest and attorneys fees.

According to a "Notice and Claim of Lien" attached to the Second Amended Complaint (Doc. 75),

the Alaqua POA placed a lien on Acosta's property in December 2002 in the amount of $1400 for

unpaid assessments, late charges, interest and costs of collection.   In April 2008, the Alaqua POA

sued Acosta in state court, seeking to collect amounts allegedly owed by Acosta and to foreclose

the lien.   That state court suit (henceforth, the "Collections Case") was filed by the firm of Taylor

& Carls, P.A. (henceforth, the "Taylor Firm").   In May 2009, the law firm of Harold E. Scherr,

P.A. (henceforth, the "Scherr Firm") was substituted for the Taylor Firm.[1]   The lien foreclosure

claim was voluntarily dismissed in June 2009.

On May 6, 2011, Gustino and the Gustino Firm filed a notice of appearance in the

Collections Case.   The day before doing so, Gustino sent the following letter to Acosta's attorney,

David Chico:

> Dear Mr. Chico:
>
> Please be advised that the undersigned counsel represents the interests of Alaqua Property Owners Association, Inc. (the "Association") relative to its collection of outstanding homeowner association assessments, together with accrued interest, costs and attorney's fees, all recoverable from your clients pursuant to the Declaration of Restrictive Covenants for Alaqua, as lawfully amended (the "Declaration") and Section 720.3085, Florida Statutes. I shall be entering an appearance this week in [the Collections Case], and will be filing a motion to amend the Association's complaint to add back in the foreclosure of lien count that Mr. Scherr's office chose to drop.   I will be in touch with your office to coordinate a mutually acceptable date and time for hearing on the motion.   I would also like to schedule the depositions duces tecum of your clients as soon as that can be arranged.   Kindly confer with your clients and provide me with several alternative dates on which those depositions can convene.   I would like to shoot for sometime in June, if at all possible.
>
> I am also writing to you today to advise that I have received a copy of your correspondence dated May 2, 2011 with respect to proposed mediation; from what I glean, your contention is that the restrictions recently adopted by the membership run afoul of your clients' constitutionally protected rights.   I believe that your clients are fundamentally misguided in this belief, and would love to see any case law authority that you may have that would substantiate such novel assertions.   I should also remind you that if you choose to prosecute any claim against my client that lacks substantial support in law, you could be exposed personally to an award of prevailing party attorney's fees and costs in the matter.

---

[1] The Scherr Firm withdrew from the case in February 2012.

Lastly, please be advised that I did not receive the list of proposed mediators (your Exhibit "A").   I would greatly appreciate it if you would forward that list as soon as possible so that I may be in a position to timely respond to your mediation request.

Thank you for your anticipated coordination.

Very truly yours,

/s

James A. Gustino

cc:     Board of Directors, Alaqua Property Owners Association
         Sentry Management, Inc. – David Forthuber, LCAM
         Adam C. Herman
         Harold E. Scherr

(Doc. 75 at 23-24).

In June 2011, Gustino filed a motion to amend the complaint in the Collections Case to reincorporate the lien foreclosure count that had been voluntarily dismissed in June 2009.   The motion was granted the next day. Gustino filed the instant suit on August 1, 2011.

On May 30, 2012, the judge in the Collections Case granted a motion for partial summary judgment filed by Acosta and dismissed the Alaqua POA's lien foreclosure count with prejudice as barred by the statute of limitations.   (Doc. 75 at 25).   The order did not explain the judge's rationale or specify the applicable statute of limitations but cited to *City of Riviera Beach v. Reed*, 987 So. 2d 168 (Fla. 4th DCA 2008).[2]

---

[2] In *Riviera Beach*, the City sought to foreclose a number of liens that had arisen as a result of nonpayment of water, sewer, lot cleaning and demolition special assessments.   *Id.* at 169. The liens had been recorded more than five years before the suit had been filed, and the property owners argued that the City's foreclosure action was barred by the five-year statute of limitations found at Section 95.112(c), Florida Statutes (1995).   *Id.* at 170.   The City argued that the statute of limitations did not begin to run until suit was filed, and that it had 20 years to foreclose the liens under the statute of repose applicable to mortgages liens with no ascertainable maturity date, Fla. Stat. § 95.281(1)(b).   *Id.*   The Court found that the five-year statute of limitations found in Fla. Stat. § 95.112(c) applied, that it began to run upon the filing of the liens, and the lien foreclosure claims were therefore barred by the statute of limitations.   *Id.*

The Plaintiff contends that in October 2013, in a second state court suit, a judge found that the Alaqua POA had not properly elected the president or board of directors who purportedly retained the Defendants.   So far as the Court can tell, that order has not been made a part of the record in this case, but the Defendants do not dispute that it was entered.[3]

In his Second Amended Complaint (Doc. 75), Gustino asserts five claims, all arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*: threatening to enforce a time-barred debt (Count I); threatening to take legal action without authority (Count II); failing to provide proper notice as required by the FDCPA (Count III); attempting to collect amounts not authorized by agreement or permitted by law (Count IV); and improperly implying that failure to pay would result in the seizure of property (Count V).   By way of the instant motion, Acosta seeks summary judgment as to all five counts.

## II.   Background

### A.   Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.   Fed.R.Civ.P. 56(c).   Which facts are material depends on the substantive law applicable to the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).   In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the

---

[3] The Defendants contend that the Alaqua POA subsequently held proper elections, and the individuals who won those elections ratified the actions taken previously, including the retention of the Defendants.

party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B. The FDCPA

The FDCPA imposes civil liability on "debt collector[s]" for certain prohibited debt collection practices. Congress enacted the FDCPA to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e) . The Act regulates interactions between consumer debtors and "debt collector[s]," defined to include any

person who "regularly collects ... debts owed or due or asserted to be owed or due another." §§ 1692a(5), (6).   Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, § 1692e(2)(A); communicating with consumers at an "unusual time or place" likely to be inconvenient to the consumer, §1692c(a)(1); or using obscene or profane language or violence or the threat thereof, §§ 1692d(1), (2).   *See generally* §§ 1692b–1692j; *Heintz v. Jenkins*, 514 U.S. 291, 292–293, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

The Act is enforced through administrative action and private lawsuits. The FDCPA provides that "any debt collector who fails to comply with any provision of th[e][Act] with respect to any person is liable to such person."   15 U.S.C. § 1692k(a).   Successful plaintiffs are entitled to "actual damage [s]," plus costs and "a reasonable attorney's fee as determined by the court."   *Ibid*.   A court may also award "additional damages," subject to a statutory cap of $1,000 for individual actions, or, for class actions, "the lesser of $500,000 or 1 per centum of the net worth of the debt collector."   § 1692k(a)(2).   In awarding additional damages, the court must consider "the frequency and persistence of [the debt collector's] noncompliance," "the nature of such noncompliance," and "the extent to which such noncompliance was intentional."   § 1692k(b).

**III.   Analysis**

Section 1692e of the FDCPA provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and goes on to provide a number of examples of conduct that violates that section.   Section 1692e(5) establishes that it is a violation of the FDCPA to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken."   Section 1692e(4) establishes that it is a violation of the FDCPA to represent or imply "that nonpayment of any debt will result in … the

seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

The bulk of Acosta's claims arise from the May 5 letter from Gustino to Acosta's attorney, Chico, and in particular from Gustino's statement within that letter that he "will be filing a motion to amend the Association's complaint to add back in the foreclosure of lien count".   (Doc. 75 at 23).   Because the judge in the Collections Case subsequently determined that the foreclosure claim was barred by the statute of limitations (Doc. 75 at 25), Acosta asserts in Count I that the statement of intent to refile the lien foreclosure claim was a threat to take action that could not legally have been taken, in violation of Section 1692e(5).   In Count II Acosta makes the same assertion – that Gustino and his firm could not have legally reasserted the lien claim – because the officers of the Alaqua POA had not been properly elected at the time they retained the Defendants. In Count V, for both of these reasons, Acosta asserts that the statement of intent to refile the lien violated Section 1692(e)(4) because it was an improper representation that Acosta's home would be seized and sold.

The Defendants argue, *inter alia*, that Gustino's statements within the May 5 letter are shielded by litigation immunity.[4]   "In Florida, absolute immunity attaches to any act that occurs during the course of a judicial proceeding so long as the act has some relation to the proceeding." *Kinsey v. MLH Fin. Services, Inc.*, 509 Fed. Appx. 852, 853-54 (11th Cir. 2013) (FDCPA case) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So.2d 606, 608 (Fla.1994)).   The sending of a letter from one attorney to opposing counsel, informing the latter that the former was taking over an existing case and discussing

---

[4] The Defendants raised litigation immunity as their sixth affirmative defense to the Second Amended Complaint.   (Doc. 77 at 15).

various issues such as amendments of pleadings and scheduling of mediation, is a quintessential example of "an act that occurs during the course of a judicial proceeding [and] has some relation to the proceeding."   *Kinsey*, 509 Fed. Appx. at 853-54.

In his motion, Acosta asserts that the United States Supreme Court rejected application of litigation immunity to FDCPA cases in *Jerman v. Carlisle, McNealy, Rani, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010).   (Doc. 81 at 18).   However, after making this assertion, Acosta admits (in a footnote) that the litigation privilege argument in that case was raised only in one party's brief and not addressed by the Supreme Court in its opinion.   (Doc. 81 at 18 n. 34).   As such, the Supreme Court can hardly be said to have "rejected" the argument.

Acosta does not otherwise contest the Defendants' assertion of litigation immunity. Accordingly, the Court finds that litigation immunity applies in this case and shields the Defendants from liability that might otherwise have arisen from the May 5 letter.   In addition to Counts I, II, and V, litigation immunity shields the Defendants from FDCPA liability for the claim asserted in Count III, which also arises from the May 5 letter.   In that count, Acosta asserts that the Defendants failed to include the information required by 15 U.S.C. § 1692g(a) in the letter, such as the amount of the debt and a statement that the debt will be assumed valid unless disputed within thirty days.[5]

Finally, in Count IV, Acosta asserts that the Defendants violated 15 U.S.C. § 1692f(1), which prohibits the use of unfair or unconscionable means to attempt to collect a debt, including efforts to collect amounts not expressly authorized by agreement or permitted by law.   Acosta

---

[5]  Moreover, this case had been going on for three years before Gustino and his firm got involved, and the FDCPA does not entitle a debtor to a new validation notice every time a new debt collector enters the picture.   *Oppong v. First Union Mortg. Co.,* 326 Fed.Appx. 663, 666 (3d Cir. 2009) and cases cited therein.

asserts that the Defendants violated this section by attempting to collect (1) assessments in amounts not authorized by a duly-elected homeowners association and (2) interest exceeding the eighteen percent authorized by Florida law.   These allegations rest on the motion to amend filed by the Defendants in June 2011 in the Collections Case (and first discussed in the May 5 letter). According to Acosta, the disputed sums were included in a document attached as an exhibit to a proposed amended complaint, which was in turn attached to the Defendants' motion to amend. (Doc. 75 at 13).   Again, the inclusion of these figures in the proposed amended complaint clearly arose during the course of a judicial proceeding and therefore this act is protected by the litigation privilege under Florida law.

The Defendants have not moved for summary judgment.   However, given the grounds for denial of the Plaintiff's motion discussed *supra*, entry of judgment on behalf of the Defendants would appear to be the proper result here.   Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 81) filed by the Plaintiff, David Acosta, is **DENIED**.   And it is further

**ORDERED** that, pursuant to Rule 56(f), Federal Rules of Civil Procedure, the Plaintiff is hereby notified that the Court intends to enter summary judgment on behalf of the Defendants for the reasons set forth in this opinion.   On or before May 15, 2014, the Plaintiff may file a brief,

not to exceed ten pages in length, in opposition to the entry of summary judgment for the

Defendants.   Should the Plaintiff do so, the Defendants may file a response brief, again not

exceeding ten pages in length, on or before May 26, 2014.

       **DONE** and **ORDERED** in Chambers, Orlando, Florida on May 2, 2014.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party