UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

David Acosta

        Plaintiff,

vs.                                    Case No. 6:11-CV-1266-ORL-31-GJK

James A. Gustino, P.A., James A. Gustino *et al.*

        Defendants.
_____/

## PLAINTIFF'S AMENDED RESPONSE TO THE COURT'S
## SUA SPONTE MOTION FOR SUMMARY JUDGMENT

Plaintiff David Acosta, by and through the undersigned counsel, hereby files a response to this Court's Order directing a response prior to entry of summary judgment in favor of Defendants, stating as follows.[1]

## BACKGROUND

On May 2, 2014 this Court denied Plaintiff's Motion for Summary Judgment on grounds that the Florida common law litigation privilege barred all the claims. The Court announced its intent to *sua sponte* enter summary judgment in favor of Defendants and directed the Plaintiff file a response. The following response presents two (2) issues in opposition to adverse summary judgment.

## THE LITIGATION PRIVILEGE DOES NOT BAR FEDERAL FDCPA CLAIMS

This Court announced its intent to apply a common law immunity to dispose of Plaintiff's FDCPA claims. As shown below, this Court would be alone in this state by reaching such a result. The ruling would also serve to frustrate legislative intent to curb abusive debt collector conduct Congress *preemptively* regulates while leaving the Plaintiff without a remedy.

---

[1] The title of this response has been amended to reflect it relation to the Court's Order (Doc 98). The previously-filed response was not properly captioned.

As explained in *DelMonico v. Traynor*, 116 So. 3d 1205, 1221 (Fla. 2013), the Florida litigation privilege has its roots in the judiciary's policy for fostering an environment where litigants, judges, witness and attorneys are free from fear of being sued for potentially *derogatory* statements made during litigation and related activities. Originally applied to statements contained in a complaint, the rule has been expanded to include all acts occurring during the course of judicial proceedings.[2] No court has interpreted this rule as operating to veto federal consumer protection laws – although that would be the net effect in this case.

Litigation Privilege Rejected by Courts

Beginning in 2005, 29 cases involving 32 decisions in Florida district courts have discussed, considered or ruled on application of the common law litigation privilege in connection with consumer law claims. Only 28 of these cases and 31 decisions appear in Westlaw.[3] Except for this Court's ruling (Doc 98), to which this response is directed, no district court has ever applied the Florida common law litigation privilege to dismiss FDCPA claims, deny summary judgment or enter summary judgment in favor of defendants alleged to have violated federal consumer protection law.[4]

**Every Florida court to have considered litigation privilege as a defense to FDCPA claims has rejected application of the common law doctrine to trump federal claims**, including this Court in *N. Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1332 (M.D. Fla. 2009) and *Correa v. BAC Home Loans Servicing LP*, 6:11-CV-1197-ORL-22, 2012 WL 1176701 (M.D. Fla. 2012).

> See also *Pescatrice v. Orovitz*, 539 F. Supp. 2d 1375, 1380 (S.D. Fla. 2008)(Rejecting application of litigation privilege to FDCPA claims); *Battle v. Gladstone Law Group, P.A.*, 951 F. Supp. 2d 1310, 1315 (S.D. Fla. 2013) (litigation privilege not applicable to FDCPA claims); *Rotenberg v. MLG, P.A.*, 13-CV-22624-

---

[2] *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007)

[3] The district court decisions on the underlying case in *Kinsey v. MLH Fin. Services, Inc.*, 509 Fed. Appx. 852, 853 (11th Cir. 2013) is not found in Westlaw, although available for download in Pacer.

[4] Only nine (9) cases have directly ruled on application of the litigation privilege on federal law claims. The balance of cases relate to rulings on state law claims or otherwise only mention the immunity doctrine.

UU, 2013 WL 5664886 (S.D. Fla. 2013) (denying motion to dismiss FDCPA claims on grounds of litigation privilege); *Lewis v. Marinosci Law Group, P.C.*, 13-61676-CIV, 2013 WL 5789183 (S.D. Fla. 2013) (Florida's litigation privilege does not bar federal claims); *Samson v. Marinosci Law Group, P.C.*, 13-61677-CIV, 2013 WL 5789216 (S.D. Fla. 2013) (Defendant offers no authority for dismissal of FDCPA claims on grounds of litigation privilege); *Hall v. MLG, P.A.*, 13-80896-CIV, 2013 WL 5863012 (S.D. Fla. 2013) (Rejecting litigation privilege defense to FDCPA claims "out of hand").

### The Kinsey Case

The Court cites to the unpublished case of *Kinsey v. MLH Fin. Services, Inc.*, 509 Fed. Appx. 852, 853 (11th Cir. 2013) as supporting application of the litigation privilege. However, Plaintiff respectfully submits the *Kinsey* Court did not affirm on grounds of litigation privilege. Nor was the dismissal order on appeal grounded on application of the litigation privilege to the FDCPA claims. There is no part of the *Kinsey* decision that says, or implies, federal claims are subject to a common law litigation privilege. The Court recited the immunity defense because Mr. Kinsey's **state law claims** were exposed to dismissal on this basis.

A close examination of the pleadings in that case, and the corresponding dismissal order, reveals a *gross* failure by the *pro se* plaintiff to state a claim <u>because the complaint lacked sufficient facts</u>.[5] In dismissing the two complaints the district court applied the litigation privilege to only five of the 30 counts. Of these, counts V and X were based on claims for violations of Florida Consumer Collection Practices Act ("FCCPA") but without any facts, counts V and X each also referred to a provision of the FDCPA. It simply cannot be said that Magistrate Judge Klindt's order dismissed the FDCPA claims, if any, by application of the litigation privilege.[6] Nor does the Eleventh Circuit appear to have affirmed on this basis. The greater weight of authority on this legal issue in Florida does not

---

[5] The complaint in that case, filed by a *pro se* plaintiff, contained 30 hand-written counts presented in the most convoluted way. The dismissal order, showing extreme care in examining the claims despite the form and lack of substance, reflects district court's patience.

[6] Indeed, the order analyzes the FDCPA and the FCCPA claims each in its own section. The litigation privilege is applied in the FCCPA section but it is neither applied nor even mentioned in the FDCPA section.

support denial of Plaintiff's Motion for Summary Judgment or entry of judgment in favor of the Defendants.

<u>Other Authorities</u>

The litigation privilege defense was raised and rejected by the Third Circuit in *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011) *cert. denied,* 132 S. Ct. 1141, 181 L. Ed. 2d 1016 (U.S. 2012), stating: "[C]ommon law immunities cannot trump the [FDCPA]'s clear application to the litigating activities of attorneys," *Sayyed*, 485 F.3d at 231, and, like the Fourth Circuit, we will not "disregard the statutory text in order to imply some sort of common law privilege," id. At 229; see also *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615–17 (6th Cir.2009).[7]

Similarly, the litigation privilege defense was also raised in *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir. 2007).[8] Sayyed goes on to analyze the statute's language and holds that "the statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA."

Both in *Allen ex rel.*, supra, and *Sayyed*, supra cite to *Heintz v. Jenkins,* 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), which held that the FDCPA's definition of "debt collector" includes "lawyers who regularly, **through litigation**, attempt to collect consumer debts". If a state litigation privilege was meant to apply the FDCPA (a federal statute) then the FDCPA would not govern lawyers conduct in litigation as *Heintz* found. It is important to note that in *Heintz* the offending communication was a **lawsuit** settlement letter that the creditor's lawyer wrote to the debtor's lawyer (at 293)—the kind of communication or conduct that is protected by the litigation privilege at the state level. *Heinz* ended the decision with this statement: "the (FDCPA) applies to

---

[7] The privilege in this case from the State of New Jersey is the same as Florida's privilege: protecting communications in judicial proceedings; at 369.

[8] Involves the privilege in Maryland, which is also the same as in Florida: any statement made in the course of judicial proceedings; at 229.

attorneys who 'regularly" engage in consumer-debt-collection activity, *even when that activity consist of litigation.*" at 299 (italics added).

In *Jerman v. Carlisle, McNealy, Rani. Kramer & Ulrich L.A.*, 130 S.Ct. 1605 (2010) the United States Supreme Court examined an alleged FDCPA violation occurred in the core part of a lawsuit. In *Jerman* the offending communication was a notice that was attached to the complaint. *Jerman* reiterating its prior holding in *Heintz v. Jenkins,* 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) that the FDCPA's definition of "debt collector" includes "lawyers who regularly, **through litigation**, attempt to collect consumer debts". *Jerman* at 593. Imploring application of the state litigation privilege within the law firm's brief, presumably read by the Court, proved to be unhelpful. Even though not addressed in Justice Sotomayor's opinion on behalf of the Court, the defense appears to have been rejected.

The inescapable conclusion of all these cases is that Florida's common law privilege does not apply in the federal FDCPA statute where Congress did not intent to exempt lawyer litigation activities.

Consumers Left Without Remedy

Applying a common law immunity to bar FDCPA claims leaves a federal protected class of citizens *without a remedy or forum*. In *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994) the Florida Supreme Court said litigants are *not* left without a remedy by application of litigation privilege <u>because remedies are available by discipline of the courts, the bar association, and the state</u>.[9] However, these *disciplinary* authorities can never reach or supplant the scope of the regulatory scheme Congress enacted to regulate debt collection because, absent a proper claim in state or federal court, there is no power to award FDCPA statutory damages, actual damages, declaratory or injunctive relief, or class-level relief. The gap

---

[9] Citing to *Wright v. Yurko*, 446 So.2d 1162, 1164 (Fla. 5th DCA 1984)

between what can be imposed as a *disciplinary* sanction and Congressional intent under the FDCPA represents the degree to which federal law and related federal rights are discarded in favor of a common law immunity.

It is simply not reasonable for consumers to expect or obtain real relief by asking a trial court judge to impose sanctions for violations of FDCPA, such as noticing and verification requirements; use of false or deceptive means to collect a consumer debt; threatening to take action that could not be taken; or, failing to inform a consumer of the right to dispute a debt.[10] If Congress intended for enforcement of the FDCPA this way it would have said so.

Denying consumers the right to seek redress in state or federal court by application of a state common law immunity unconstitutionally denies access to the courts and to have the dispute decided by jury trial. All of this is unconstitutional because it violates the Supremacy Clause. *See Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 371 (1990)(A state court may not deny a federal right, when the parties and controversy are properly before it, in the absence of "valid excuse. . . . the Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source.)

While all of this may appear as a policy argument, in practical terms the result is significant because it turns back the clock on consumer protection to the late 1970s when law firms adopted the abusive debt collection practices because they were exempt from the FDCPA.[11] Indeed, "The legislation was a direct response to the explosive growth in the number of law firms that had entered the debt collection business and were abusing the exemption the original Fair Debt Collection

---

[10] Congress intended to regulate and curb these debt collection activities by empowering consumers to bring claims, not by filing motions asking a judge to impose sanctions, filing a bar complaint or filing a complaint with the Florida Attorney General. Application of the litigation privilege, as occurred in the instant case, forecloses all avenues of redress.

[11] Nearly a decade after its adoption of the FDCPA, Congress repealed the original attorney exemption, partly because lawyers were "tout[ing] the[ir] exemption" and implying that they could engage in conduct prohibited to collection agencies. H.R. Rep. No. 405, 99th Cong., 2d Sess. 5 (1985), reprinted in 1986 U.S.C.C.A.N. 1752, 1756.

Practices Act provided."[12] Allowing consumers to be placed in the same position as they were in 1986, when Representative Annunzio addressed Congress with these words, by applying a common law immunity is to invite debt collector attorneys back to the abusive conduct they engaged in prior to the repeal of their exemption – while leaving the same consumers without a remedy. The Court should refuse to contribute that ultimate result by denying application of the litigation privilege that otherwise trumps and frustrates Congressional intent.

Finally, in determining entry of summary judgment the Court should observe the Eleventh Circuit reversed dismissal even though it could have affirmed under the Tipsy Coachman Doctrine, as Defendants requested. Clearly the Circuit Court knew Plaintiff's claims involved attorney conduct occurring in a state court litigation and could have simply applied the immunity privilege to affirm, with or without an opinion. It chose not do so Instead, on remand the Circuit Court specifically said: "However, the *key* to the federal case is not only *whether the debt was enforceable* but also ***whether the Gustino Defendants' conduct when collecting that debt complied with the Fair Debt Collection Practices Act***." *Acosta v. James A. Gustino, P.A.*, 478 Fed. Appx. 620, 622 (11th Cir. 2012) at 621. The Eleventh Circuit's words are deliberate and should be considered by this Court in deciding the *sua sponte* motion for summary judgment.

**THERE WAS NO JUDICIAL PROCEEDING TO INVOKE IMMUNITY**

Litigation privilege is also unavailable as a defense to Mr. Acosta's FDCPA claims because there has been no valid "judicial proceeding" pending in state court. The homeowners association never filed a lawsuit against Mr. Acosta for *any* claim because it had no board of directors who could authorize and institute the action. Consequently, on the day the complaint was filed in that action, there was no controversy before the circuit court sufficient to invoke subject matter jurisdiction. Facts identifying this legal defect appear on the face of the record in the instant action, contained in

---

[12] STATEMENT OF REP. ANNUNZIO, 132 Cong. Rec. H10031 (daily ed. Oct. 14, 1986)

Plaintiff's Second Amended Complaint;[13] Plaintiff's Motion for Summary Judgment;[14] and, Declarations of James A. Gustino and John Ritenour.[15]

Florida law requires the association to conduct all business and exercise its authority under the direction of a board of directors.[16] Association bylaws contain the same requirement.[17] The state court determined the association never held elections and had no board of directors at the time the lawsuit was filed.[18] Without duly-elected board of directors <u>the association could not engage in corporate action or authorize the filing of any claim against Mr. Acosta</u>.[19]

John Ritenour ("Ritenour"), who directed the filing of this lawsuit and signed the verification on the original complaint in the state action, was prohibited by Florida law from doing so. <u>Individual association members do not have authority to act for the Association</u>.[20] Ritenour has no claim against Mr. Acosta, individually or otherwise, and therefore lacked standing to bring the action. The claims against Mr. Acosta were contained in pleadings statutorily barred by Fla. Stat. § 720.303, as to Ritenour, and by Fla. Stat. § 617.0801, as to the association. This was fatal to the claim. *See McLean v. JP Morgan Chase Bank Nat. Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012), reh'g granted (Feb. 8, 2012) (a party is not permitted to establish the right to maintain an action retroactively by acquiring standing to file a lawsuit after the fact.)

---

[13] Second Am Compl at 26, 27, 28, 31, 32 and Exhibit "E"

[14] See Acosta *Aff'd* at ¶ 4, attached to Plaintiff's Motion for Summary Judgment (Doc. 81)

[15] Doc 84, 86

[16] Fla. Stat. § 617.0801; *Browning v. State*, 133 So. 847, 848 (Fla. 1931) (A corporation can act only through its officers and agents.). Without a duly-elected board of directors the corporation cannot lawfully take action.

[17] The business and property of the corporation **shall be managed and controlled by a board of directors**, who shall be elected annually by the members to serve as directors until the next annual meeting of the members. Bylaws Article IV § 1

[18] *See* October 25, 2013 Order granting Partial Summary Judgment, Judge Marlene Alva. Judicial notice was requested with Plaintiff's Motion for Summary Judgment; also attached as Exhibit "E" to the Second Amended Complaint

[19] Neither could the association authorize compliance with contractual and statutory conditions precedent, such as filing a claim of lien, hiring attorneys or prosecuting claims.

[20] A member does not have authority to act for the association by virtue of being a member. Fla. Stat. § 720.303.

Applicable Law

In Florida circuit courts have subject matter jurisdiction over actions at law in which the matter in controversy exceeds $15,000, exclusive of interest, costs, and attorney's fees.  *See* Art. V, § 20(c)(3), *Fla. Const.;* §§ 26.012(2)(a), 34.01(1)(c), *Florida Statutes*. A plaintiff's pleading must *show* or *demonstrate* a case or controversy exists between that plaintiff and the defendant. *United Auto. Ins. Co. v. Diagnostics of South Florida, Inc.* (Fla. 3rd DCA 2006); *Fereiro v. Philadelphia Indemnity*, 928 So.2d 374 (Fla. 3rd DCA 2006)*; Lovett v. Lovett*, 93 Fla. 611 (1927). Controversies must be brought before the court by some suitor who meets the minimum constitutional requirements to access this power. *See Lovett*.[21] Without proper jurisdiction, **a court cannot proceed at all**, but can only note the jurisdictional defect and dismiss the suit. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003 (U.S., 1998)(declining to endorse the "doctrine of hypothetical jurisdiction").

Factual Issues

In response to the jurisdictional issue shown by the above-cited record evidence, Defendants have asserted the lack of authority to file the lawsuit in state court was cured by ratification. This is a factual question that cannot be resolved on summary judgment.[22] In fairness of presenting this legal issue to this Court, the same facts and law was posed within Mr. Acosta's Motion for Summary Judgment in the state court action. The circuit court denied summary judgment citing to *factual issues* attendant to validity of the lawsuit. However, the circuit court judge cautioned that the defense presented by Mr. Gustino may not survive a motion for directed verdict at trial. The same factual issue stands in the way of applying a litigation privilege in this case without first determining validity of the

---

[21] See *also Lockwood v. Pierce*, 730 So.2d 1281 (Fla. 4th DCA 1999); *In re Estate of Hatcher*, 439 So.2d 977, 980 (Fla. 3rd DCA 1983).

[22] Plaintiff incorporates by reference all arguments regarding ratification that were raised within the Plaintiff's Motion for Summary Judgment (Doc. 81) as if fully stated here.

state action. At a minimum, these facts make this case distinguishable from all other authorizes that may be cited for application of the litigation privilege.

After examination of admissible evidence, a finding that the circuit court lacked jurisdiction would lead this Court to apply the directive of *Steel Co. v. Citizens for a Better Environment* and to conclude that the state court could not "proceed at all", therefore there was no judicial proceeding on which the litigation privilege could attach. That factual issue needs to go to the jury at trial. Therefore, summary judgment should not be entered at this time.[23]

## CONCLUSION & REQUESTED RELIEF

Based on the foregoing authorities, matters of record and equitable considerations the Plaintiff requests summary judgment not be entered in favor of Defendants and this cause continue for jury trial.

**WHEREFORE**, Plaintiff David Acosta requests that summary judgment in favor of Defendants should be denied and that this cause be to a jury trial.

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ David M. Chico
David M. Chico, Esq.
FL Bar No. 0010318
ATTORNEY DAVID M. CHICO, P.A.
607 Celebration Ave.
Celebration, FL 34747
Phone: 407-933-7703; Fax: 407-933-7713
Email: david@davidchicolaw.com

---

[23] In opposing summary judgment Mr. Acosta relies on all affidavits and sworn declarations filed into the record of this case; the orders to which the Plaintiff has asked this Court to take judicial notice; and, all admissions by Defendants in this action.